Matter of S. S. (2005 NY Slip Op 50262(U))

[*1]

Matter of S. S.

2005 NY Slip Op 50262(U)

Decided on February 28, 2005

Family Court, Orange County

Bivona, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 28, 2005

Family Court, Orange County
In the Matter of S. S., A Person Alleged to be a Juvenile Delinquent.

D-8041-01/04D

Barbara Strauss, who is law guardian for the respondent, is located at:
60 Erie Street
Goshen, NY 10924
845-294-2616
FAX: 845-294-3861
straussb@frontiernet.net
W. Merrill Sanderson, who represented OFCS is located at
52 Washington St.
Rennselear, NY 12144
518-402-3680

Andrew P. Bivona, J.
The above captioned two matters were tried together in this Court on February 16, 2005.
The first matter was an application on behalf of the Respondent, filed by his Law Guardian, Barbara J. Strauss, Esq., seeking a modification of the order of disposition to either place the Respondent in the custody of the Department of Social Services for relative foster care or alternatively, release him from custody of the Office of Children and Family Services and allow him to reside with his aunt in the State of Maryland. By Decision and Order dated January 20, 2005, this Court granted that application to the limited extent that the issue was set for hearing with the underlying request for extension of custody. It should be noted that the Respondent's aunt and her husband, Robin P. and Malcolm P., filed a custody petition which was heard on January 10, 2005 in which Mr. and Mrs. P. were granted legal and physical custody of S. upon his release from the custody of the Office of Children and Family Services (emphasis added).
The second matter is a request by the Office of Children and Family Services, also referred to hereinafter as OCFS, for an extension of placement through his eighteenth birthday (October 26, 2005) as well as this Court's approval of a revised permanency plan. The current permanency plan anticipates S. being discharged to his aunt's home in April with aftercare services. This is essentially the same permanency plan offered in July, 2004, except at that time consent by the State of Maryland to provide aftercare services through the Interstate Compact on Juveniles had not been obtained.
As indicated, both matters were joined for trial and the Respondent, S. S., was represented by his Law Guardian, Barbara J. Strauss, Esq. and the Office of Children and Family Services was represented by W. Merrill Sanderson, Esq. Both parties presented their respective [*2]cases and the following witnesses were examined and cross-examined: Robin P., the Respondent's maternal aunt, Malcolm P., her husband, Jose Neverez, Y.D. Counsellor, Thomas Gove, Case Manager for The Office of Children and Family Services, and S. S.. Summations were entertained at the close of testimony.
Based on the testimony adduced, this Court makes the following findings of fact:
Robin and Malcolm P. are the maternal aunt and uncle of S. S. and have offered to provide a permanent home for this young man, now 17 years old. Mrs. P. previously had custody of S. from 1995 to 1997 which was terminated when he returned to his mother's custody. Mrs. P. is a math instructor and Mr. P., having retired from the military, is now employed by the Office of Homeland Security as a Wireless Program Manager. They presently have residing with them Christopher S., the brother of the subject child, along with their own children. Both Mr. and Mrs. P. are also ministers of their church and a great deal of their time is taken up by religious and social events connected with the church. Their entire family, including Christopher, is involved and both testified that S. would be involved as well. Mr. and Mrs. P. have been in contact with the Maryland officials of the Interstate Compact and have been interviewed by that agency. During his testimony Malcolm P. was questioned about the arrangement made by the P.s to secure counseling services for S.. He indicated that he was aware of the necessity for such counseling and was sure it would be available in the community or at the three military institutions, namely Andrews Air Force Base, Boeing Air Force Base and Walter Reed Army Facility, all located nearby and which services he has access to because of his military background.
Jose Neverez, an O.C.F.S. Y. D. Counselor from Brookwood Secure Center, told the Court how S. is progressing at that facility. He testified that this young man was transferred to Brookwood, a secure facility, on December 2, 2004 from Goshen Limited Secure because he violated rules of the facility. Mr. Neverez testified that S. is doing well at Brookwood and that his behavior is acceptable.
Thomas Gove, S.'s case manager from Goshen Limited Secure Facility, testified regarding S.'s behavior since the last permanency hearing. He reported that S. had committed three infractions of a sexual nature involving female staff within a 60 day period. As a result, he was transferred to Brookwood Secure Facility. He testified about S.'s adjustment to the program at Goshen, or lack thereof during his 20 months in the custody of the Office of Children and Family Services. Both counselors testified that S. has received sex offender counseling at both facilities.
Mr. Gove testified regarding the permanency plan presented to the Court at the hearing held on the prior extension application in July, 2004. At that time, S. was doing very well and the Office of Children and Family Services was willing to discharge him. According to Mr. Gove's testimony, S.'s mother was not a resource, as she failed to maintain contact with him. He testified about how S.'s aunt and uncle were identified as a resource and how they were located when S. gave them their location and telephone number. However, as the only family resource available to S. was Mr. and Mrs. P. in the State of Maryland, OCFS requested a six month extension of placement to obtain a report through the Interstate Compact on Juveniles.
The Court took Judicial Notice of the report dated October 28, 2004, entitled "Maryland Department of Juvenile Services Interstate Compact on Juvenile Placement Investigation" and [*3]contained in the Affirmation in Opposition to the Respondent's aforementioned motion. The substance of that report is very favorable to the P. family and the prospect of S. living with the family, and the State of Maryland agreed to provide courtesy supervision of S..
The report did reference a financial stability issue. At the hearing, both Mr. and Mrs. P. explained that the basis of that issue was that they could not provide him with medical coverage if he continued in the custody of the Office of Children and Family Services, nor would the State of Maryland provide him with medical coverage under those circumstances. It was also their understanding that New York State would not provide coverage if S. resided in Maryland. However, the P.s could cover him under their health insurance policy if he was in their sole custody.
Thomas Gove testified that it was this "financial" issue that kept OCFS from sending S. to live with his aunt and uncle despite the agreement by the State of Maryland to accept supervision. It is apparent that this put the P.s and S. in a "Catch-22" situation. When Mr. and Mrs. P. expressed concerns as to their ability to provide for S. if he continued in the custody of OFCS, so far as medical coverage was concerned, this was used as a reason not to send him to live with them. Evidently, no one from the Office of Children and Family Services reached out to the P.s to attempt to resolve this issue.
Lastly, there was testimony from S. S.. He testified that he was sent to Brookwood from Goshen because he had contact with female staff. He explained that he and others were fooling around when he tripped a staff member on the stairs. He had admitted this infraction at the disciplinary hearing, although in his testimony he now claims that because he and the others were involved in "hand play" (wrestling), that he made this admission so the staff member would not get into trouble. In regard to the other two instances, S. denies any contact with female staff, although he waived his right to the administrative hearing, which resulted in his transfer to Brookwood Secure Facility.
DISCUSSION
This Court has had extensive experiences with the S. family, going back to S.'s mother, his brother and S. himself. His brother, who was in the custody of the Orange County Department of Social Services, is now living in Maryland with Mr. and Mrs. P..
After the initial Juvenile Delinquency adjudication, S. was placed on Probation. He violated Probation which resulted in his placement with the Orange County Department of Social Services. The Department moved to modify the disposition and he was placed with the Office of Children and Family Services.
At the time of the last extension in July, 2004, the petition was granted on consent for a period of six months to permit the application through the Interstate Compact. After their interview with the investigator in the State of Maryland, Mr. and Mrs. P. filed their petition for custody of C. and S. on October 15, 2004, which was granted in full as to C. and to the limited extent as to S. as set out above.
It is clear that when it became apparent that OCFS was not going to send S. to live with his aunt and uncle as agreed, S.'s behavior began to deteriorate at Goshen Limited Secure. It was a result of this deterioration that he was sent to Brookwood Secure Center. During the course of the hearing, the P.s were questioned about what sex offender counseling services would be available in Maryland to meet S.'s needs. Although they had not investigated that specialized [*4]treatment, they testified as to the availability of resources to them. Upon cross examination of Jose Neverez, it was learned that no one from OCFS had looked into what sex offender counseling services would be available in the State of Maryland either.
Now this matter is back in Court and is further from the contemplated discharge than it was before. While the Office of Children and Family Services cites as the main obstacle to the effectuation of the plan as the "financial issue", the Court finds that this is a bureaucratic snafu that should have been solved rather than permitted to stall the implementation of the permanency plan. Of more concern to the Court is the deterioration in S.'s behavior which resulted in his placement at Brookwood Secure Facility. The Court sees this relapse as a result of the Agency's failure to effectuate its own plan and it is the Court's belief that S. can receive appropriate counseling and will benefit more from that counseling when he is in a permanent home environment. The Court does not construe these incidents as evidence that S. is a danger to the community at large which would warrant his continued placement with the Office of Children and Family Services.
THE LAW
Family Court §355.5 outlines the obligations of the Court under the Federal Adoption and Safe Families Act commonly referred to as ASFA and as adopted by New York State Here we have a young man who has been in placement for twenty months and whose first permanency hearing was held in July, 2004. At that hearing, the permanency plan formulated was to release S. to his aunt and uncle with aftercare provided by the State of Maryland pursuant to the Interstate Compact. It is incumbent upon the Court to ensure that the agency having custody after formulating a permanency plan must make reasonable efforts to effect that plan (F.C.A. §355.5[7][a]). Reasonable efforts were taken to effectuate that plan by having the P. home investigate through the Interstate Compact. The results of that investigation were exceptionally positive with the only issue being medical insurance availability.
After determining the adequacy of the permanency plan, the Court is required to determine if an extension is inconsistent with the permanency plan established for the child (In the Matter of Jessica F., 7 AD3d 708, 709; 777 NYS2d 198, 199). At the July, 2004 proceeding the Court approved the permanency plan. While permanency plans must be flexible in order to meet the needs of a maturing child or adolescent, the purpose of a permanency plan is to find a secure and safe, and hopefully loving, environment outside of agency placement. Fortunately for S., such a place has been found. It is apparent that an extension continuing him in agency care would be inconsistent with the permanency plan as established for S. in July, 2004. To permit an extension of the plan at this point would defeat the purposes of the Federal Adoption and Safe Families Act.
DECISION
This Court hereby terminates custody of S. S. with the Office of Children and Family Services and directs his release to the custody of Malcolm and Robin P., his maternal aunt and uncle pursuant to its Order of February 22, 2005, and directs the Office of Children and Family Services to provide aftercare services through the Interstate Compact on Juveniles. Mr. and Mrs. P. are to immediately enroll S. in an appropriate counseling program and continue in such program until he is therapeutically discharged.
[*5]
The above constitutes the Order of this Court.
Dated: Goshen, New York
 February 28, 2005E N T E R,
__________________________________________
HON. ANDREW P. BIVONA
Family Court Judge